739 F.2d 122
 Tariq H. MUHAMMAD, Appellant,
v.
Norman CARLSON, Director, Bureau of Prisons; Wilkinson,
Warden, Lewisburg Penitentiary; Sullivan,
Associate Warden at Lewisburg
Penitentiary, Appellees in No.
83-3575.
Tariq H. MUHAMMAD, Appellant,
v.
Dr. KRONER, Head Dr. and Physicist; Norman Carlson,
Superintendent; Wilkinson, Warden, Appellees in
 No. 83-3632.
 Nos. 83-3575, 83-3632.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
May 31, 1984.
Decided July 11, 1984.
 
 Tariq H. Muhammad, pro se.
 Mary C. Spearing, Asst. U.S. Atty., Harrisburg, Pa., for appellee in No. 83-3575.
 Albert R. Murray, Jr., Asst. U.S. Atty., Scranton, Pa., for appellee in No. 83-3632.
 Before ADAMS, WEIS, and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), established that a citizen seeking damages for an injury to a constitutionally protected interest may invoke the general federal question jurisdiction of a district court directly under the Constitution to obtain relief against responsible federal officials.
 
 
 2
 Presented in these consolidated appeals is the question whether a federal prisoner who seeks only money damages for violations of his constitutional rights by prison officials must exhaust administrative remedies prior to bringing a Bivens -type suit in federal court. Tariq Muhammad, a federal prisoner proceeding pro se and in forma pauperis, alleges in two unrelated actions both constitutional and tort violations by various prison officials. In both cases federal jurisdiction was invoked under 28 U.S.C. Sec. 1331 (1982).
 
 
 3
 The district court dismissed the two complaints as frivolous under 28 U.S.C. Sec. 1915(d) (1982) on the ground that they were filed prematurely inasmuch as Muhammad had failed to exhaust available administrative remedies before resorting to the federal courts for relief. Muhammad filed a timely appeal. We have jurisdiction to consider the consolidated appeals under 28 U.S.C. Sec. 1291 (1982) and must determine whether the district court erred as a matter of law in dismissing the complaints for failure to exhaust administrative remedies.
 
 A.
 
 4
 In Muhammad v. Carlson (No. 83-3575), the plaintiff claims that the warden and other prison officials wrongfully instituted disciplinary proceedings against him before the Inmate Disciplinary Committee whose deliberations ultimately resulted in his placement in administrative detention for seven days. This confinement, Muhammad alleges, violated his constitutional rights to practice his religion and to secure access to the courts because the detention occurred during the Muslim holiday of Ramadan and also prevented him from using the prison law library to prepare his appeals.
 
 
 5
 In Muhammad v. Kroner (No. 83-3632), the plaintiff alleges that Dr. Kroner, the prison physician at Lewisburg Penitentiary, denied him medical treatment including pain medication for a back injury sustained before his incarceration. Muhammad argues that because Kroner and other members of the medical staff were grossly negligent in failing to prescribe the requested medication, they violated his constitutional rights and thus are liable for damages.
 
 B.
 
 6
 We begin our analysis by observing that pro se prisoner complaints "however inartfully pleaded" are held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972) ). Using this liberal standard we note that in C.A. No. 83-3575, under Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) and Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), Muhammad has pleaded violations of his First and Fifth Amendment rights by prison officials, thus giving rise to a cause of action under Bivens. In C.A. No. 83-3632, Muhammad alleges both a claim for negligence against the prison physician for substandard medical care and a violation of his constitutional rights, which we take to mean a violation of the Eighth Amendment's proscription against cruel and unusual punishment.
 
 I. Muhammad v. Carlson
 
 7
 In Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Supreme Court set forth the criteria for bringing a Bivens action. A person seeking to recover damages from a federal agent under Bivens first must assert that a constitutionally protected right has been violated. 442 U.S. at 234, 99 S.Ct. at 2271. The litigant is then required to state a cause of action sufficient to invoke the general federal question jurisdiction of the district court. Id. at 239-44, 99 S.Ct. at 2273-76. Furthermore, the complaining party, after establishing his cause of action, has the burden of demonstrating why money damages are the appropriate form of relief. Id. at 244-48, 99 S.Ct. at 2276-79.
 
 
 8
 The district court, in Muhammad v. Carlson, dismissed the case before determining the validity of Muhammad's claim on the ground that federal prisoners, as a prerequisite to a Bivens action, must first exhaust administrative remedies.
 
 
 9
 Ordinarily a party is required to exhaust prescribed administrative remedies before seeking relief in the federal courts unless Congress has indicated to the contrary or the available administrative remedies are inherently inadequate. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-464, 82 L.Ed. 638 (1938); Babcock and Wilcox Co. v. Marshall, 610 F.2d 1128, 1135 (3d Cir.1979). When Congress has provided an administrative procedure which is capable of resolving a controversy, that procedure must be utilized. Am. Fed'n of Gov't Employees v. Resor, 442 F.2d 993, 994 (3d Cir.1971).
 
 
 10
 The principles of exhaustion have a constitutional dimension. For courts to act prematurely, prior to the final decision of the appropriate administrative agency, would raise a serious question implicating the doctrine of separation of powers. Babcock and Wilcox, supra at 1136, n. 21. When the federal courts allow for preliminary adjudication by an executive agency, the doctrine of separation of powers involves judicial recognition of the autonomy of the executive branch "so that the agency may function efficiently and so that it may have an opportunity to correct its own errors." Id. at p. 1137, n. 28 (quoting Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (dictum)). The exhaustion requirement does not preclude judicial relief, it simply postpones the timing of the judicial adjudication. See Barnes v. Chatterton, 515 F.2d 916, 921 (3d Cir.1975). Because Congress is vested with the power to prescribe the basic procedural scheme under which most claims may be heard in federal courts, the initial question whether exhaustion is required must be answered, where possible, by reference to congressional intent. Patsy v. Florida Bd. of Regents, 457 U.S. 496, 501, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982).
 
 
 11
 In an analogous situation, Congress requires that state prisoners, who sue state officials in federal court for alleged violations of constitutional rights under 42 U.S.C. Sec. 1983 (1976 ed. Supp. IV), exhaust available state administrative remedies, 42 U.S.C. Sec. 1997e (1976 ed. Supp. IV). Although exhaustion of state administrative remedies usually is not a prerequisite to an action under 42 U.S.C. Sec. 1983 (1976 ed. Supp. IV), the Civil Rights of Institutionalized Persons Act, 42 U.S.C. Sec. 1997 et seq. (1976 ed. Supp. IV), created a specific, limited exception to the prohibition against exhaustion for suits brought by state prisoners. Patsy, supra, 457 U.S. at 507, 102 S.Ct. at 2563. In promulgating the Act, Congress established a detailed procedure whereby states might voluntarily ensure the adequacy of their administrative remedies. 42 U.S.C. Sec. 1997e(b)(2) (1976 ed. Supp. IV). The legislative history of Sec. 1997 reflects Congress' hope that by carving out this narrow exception it would stimulate the development of successful grievance mechanisms for the numerous Sec. 1983 actions in which a prisoner's allegations stem from the conditions of his or her confinement. See Patsy, supra at 511 and n. 12, 102 S.Ct. at 2565 and n. 12. If a state prisoner who has not exhausted administrative remedies brings suit under Sec. 1983 and the available state remedies conform to the standards of Sec. 1997e(b)(2), the district court is instructed to "continue such case for a period not to exceed ninety days in order to require exhaustion." 42 U.S.C. Sec. 1997e(a)(1) (1976 ed. Supp. IV).
 
 
 12
 Bivens actions, however, are a creation of the judiciary, and are premised on the theory that victims of a constitutional violation by a federal agent have an implied right of action to recover damages against the official absent any statute conferring such a right. Carlson v. Green, 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980). Were Congress to enact some statutory scheme authorizing the Federal Bureau of Prisons or its equivalent to provide an effective alternative remedy for prisoners asserting constitutional violations, the implied remedies that Bivens recognized indeed might be unnecessary. Davis v. Passman, 442 U.S. 228, 248, 99 S.Ct. 2264, 2278, 60 L.Ed.2d 846 (1979). We note that although Congress has authorized the Bureau of Prisons to review, investigate and respond to prisoner complaints in a timely fashion, it did not empower the agency to provide damages or other relief. See 18 U.S.C. Secs. 4001, 4042 (1982); 28 C.F.R. Sec. 542.11. The narrow exception is the Bureau's authority to award up to $2500 for meritorious claims asserted under the Federal Tort Claims Act. 28 C.F.R. Sec. 543.30 et seq. Because a prisoner asserting only a claim for damages under Bivens apparently can obtain no relief from the Bureau of Prisons, it would serve little purpose to require him to exhaust administrative remedies before coming into the courts. Accord, Goar v. Civiletti, 688 F.2d 27, 29 (6th Cir.1982).[1]
 
 
 13
 In view of the limited authority of the Bureau of Prisons in providing relief and the unique nature of Bivens-type claims we may not take it upon ourselves to impose a judicially-created exhaustion requirement directed at federal prisoners. Although we commend the district court's attempt to reduce the intrusion of federal courts into the administration of federal prisons and to encourage prison officials, in the first instance, to attempt to resolve prisoner grievances, we are impelled, under the circumstances, to vacate the judgment of the district court.
 
 
 14
 Accordingly, the judgment in Muhammad v. Carlson will be vacated and the case remanded, with directions to have service completed on the defendants.
 
 II. Muhammad v. Kroner
 
 15
 Muhammad has sued Dr. Kroner and other prison officials under Bivens for Eighth Amendment violations resulting from the physician's alleged substandard treatment of Muhammad's back injury. The Supreme Court has held that prisoners who sustain personal injury during their confinement in federal prisons as a result of the negligence or wrongful conduct of federal employees may sue the government under the Federal Tort Claims Act or bring a Bivens action for damages against the individual officials who allegedly committed the tortious act. Carlson v. Green, 446 U.S. 14, 20, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980). Although Muhammad has not asserted a claim directly against the United States for Kroner's conduct, he may do so through application, in the first instance, to the Bureau of Prisons. 28 C.F.R. Sec. 543.30 et seq. Congress has explicitly authorized the Bureau of Prisons to "consider, adjust, determine, compromise, settle, and pay federal tort claims if the amount of a proposed adjustment, compromise, settlement, or award does not exceed $2500." Id.
 
 
 16
 With respect to Muhammad's Bivens claims against Kroner for alleged Eighth Amendment violations, we rely on our analysis in Muhammad v. Carlson to find that Muhammad was under no obligation to exhaust administrative remedies before asserting his claim in the district court. See also Goar v. Civiletti, 688 F.2d 27 (6th Cir.1982). In remanding the case to the district court we express no view as to the merit of Muhammad's implied claim of cruel and unusual punishment, but note that to state a cognizable claim under the Eighth Amendment "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The Supreme Court has stated that only "deliberate indifference" can amount to an "unnecessary and wanton infliction of pain" in violation of the Constitution. Id. at 105, 97 S.Ct. at 292. See also West v. Keve, 571 F.2d 158, 161 (3d Cir.1978). It is for the district court to determine whether Muhammad has sustained his claim.
 
 
 17
 Accordingly, the judgment of the district court in Muhammad v. Kroner will be vacated and the matter remanded with directions to complete service on the defendants.
 
 
 
 [1]
 Some circuits have required exhaustion of administrative remedies when the prisoner is seeking more than money damages. See Miller v. Stanmore, 636 F.2d 986 (5th Cir.1981) (federal prisoner seeking damages as well as injunctive and declaratory relief must apply to Bureau of Prisons in first instance or demonstrate why he should be excused from this requirement); Brice v. Day, 604 F.2d 664 (10th Cir.1979) (federal prisoner seeking damages and other relief for overcrowded conditions must exhaust administrative remedies)